UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                :

ST. MARYS CEMENT U.S. LLC,          :

                           :

                Plaintiff,      :      **MEMORANDUM DECISION AND**

                           :      **ORDER**

      - against -       :

                           :      25-cv-4333 (BMC)

RED ROCK INDUSTRIES, INC., DOM  :
DEL MONACO, and RED ROCK READY  :
MIX LLC,                   :

                           :

              Defendants.   :
---------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff St. Marys Cement ("SMC") brings the instant action against defendants Red Rock Industries ("Industries"), Red Rock Ready Mix ("Ready Mix"), and Dom Del Monaco (the president of Industries and Ready Mix) for defendants' failure to pay for cement products that SMC provided. SMC argues that defendants are jointly and severally liable: Industries and Ready Mix for breach of contract, unjust enrichment, and account stated, and Del Monaco through his personal guarantee. For the reasons that follow, the Court grants summary judgment to SMC.

### BACKGROUND

On February 2, 2022, Anthony Greco, the owner of a company called Concrete Solutions and a friend of Del Monaco's, emailed a blank credit application to Tara DeLuca (or De Luca), Industries' executive administrator. He explained that the credit application was from SMC for "bulk cement Supply for the plant in Farmingdale." He added, "I didn't include Dom [Del Monaco] on this. I know he isn't feeling well today and at the doctors."

Minutes later, DeLuca forwarded Greco's email and the blank credit application to Craig Otterman, the former controller in Industries' finance department, and asked him to "complete the attached."  Roughly an hour later, Otterman sent the completed credit application (the "Credit Application") to DeLuca with Del Monaco now copied, and noted that the Credit Application was "in RRI's name."  DeLuca then sent the Credit Application to Greco, who sent the Credit Application to SMC two days later.  SMC approved the Credit Application on February 11, 2022, and opened a trade credit account for Industries (the "Red Rock Account").

It is undisputed that the Credit Application that SMC received – that Otterman filled out – was for Industries.  The Credit Application identifies the applicant as "Red Rock Industries Inc."  The Credit Application lists the applicant company's taxpayer ID as 11-3626333, which is Industries' taxpayer ID; the applicant company's phone number as (516) 833-6942, which is Industries' phone number; and the applicant company's email address as finance@redrockind.com, which was Otterman's email address at Industries.

It is also undisputed that Otterman DocuSigned the Credit Application's "acknowledgement" and "personal guarantee" in Del Monaco's name.  The acknowledgement says that the undersigned "certifies and agrees" that he is "authorized to sign on behalf of the applicant company" and that "all transactions between Supplier and Applicant will be governed by the Supplier's terms and conditions of sale[.]"  The personal guarantee says that the undersigned "guarantees as a primary obligor and not just as a surety the full and prompt payment of all amounts due to Supplier by an Applicant and all costs of Supplier's enforcement, including legal fees[.]"

Del Monaco is the president of Industries, as well as its various "Red Rock" affiliates, all of which appear to engage in construction-related business.  Those companies include Ready

Mix (the other defendant in this case), Red Rock Contracting Corp., Red Rock Florida LLC, Team Red Rock Leasing Corp., Red Rock Texas LLC, Red Rock Paymaster LLC, 1634 New Highway LLC, Team Red Rock Leasing, and Red Rock Precast Products LLC.  In addition, Del Monaco created another company, Structure Industries, in 2025 "[f]or new contracts with customers" because he "needed a company that was clean, that wasn't attached to any liens or ... lawsuits."

Del Monaco testified that Otterman would typically sign credit applications on Del Monaco's behalf and in Del Monaco's name, and that Otterman had the authority to do so. However, Del Monaco also testified that Otterman did not have authority to sign personal guarantees in Del Monaco's name, and that to obtain such authority, Otterman would have had to ask Del Monaco for permission.  Contradicting that, Otterman testified that he had authority to DocuSign both the Credit Application and its personal guarantee for Del Monaco, even though he did not ask Del Monaco for permission to sign the personal guarantee.

Unbeknownst to SMC, Otterman was supposed to have completed the Credit Application for Ready Mix, not Industries.  After DeLuca had already forwarded the Credit Application to Greco, Otterman emailed DeLuca and Del Monaco to say that the Credit Application "should have been in RR Ready Mix's name" and that he would "amend and resend asap."  However, Otterman never amended the Credit Application, or at least never submitted an amended credit application to SMC.  As a result, the Credit Application that SMC received and accepted on February 11, 2022 was for Industries, not Ready Mix.

On April 27, 2022, over two months later, an individual using the email address ap@redrockprecast.com emailed a collections specialist at SMC to request that the Red Rock Account's bill-to and ship-to information be changed to Red Rock Ready Mix LLC at 1634 New

3

Hwy, Farmingdale, NY 11735.  SMC thereafter internally treated the account as "Red Rock Industries doing business as Ready Mix" and continued servicing the Red Rock Account. [1]  SMC did not amend the underlying Credit Application.  On May 3, 2022, someone at ap@redrockprecast.com again emailed a collections specialist at SMC to request a "few changes": (1) that all emails be sent to ap@redrockprecast.com instead of finance@redrockind.com,(2)  that the company phone number be changed; and (3) that the ship-to address be made the same as the bill-to address.

Between March 11, 2024 and July 16, 2024, the Red Rock Account placed approximately 40 orders.  SMC filled, delivered, and invoiced every order that was placed.  The entity that placed the orders (defendants say it was Ready Mix) accepted the delivered materials, and Industries did not lodge any objections regarding quantity, quality, pricing, or any invoice.  However, the Red Rock Account did not remit payment for any of these 40 invoices, the outstanding balance for which is either $281,087,90 or $281,987.90 (SMC uses both numbers in its motion, although the invoices reflect the latter).

SMC's March 2023 "Terms and Conditions of Sale – Cement and Cementitious Products" governed purchases on the Red Rock Account during 2024 (when orders went unpaid).  The terms and conditions stated, in relevant part:

> Customer will pay all invoices within 30 days of the date of the invoice.  Late payments will accrue interest at the rate of 1.5% per month (18% per annum) and Customer shall be responsible for all of Supplier's expenses (including legal fees) incurred in collecting any unpaid amounts.

---

[1] Defendants contest this fact, explaining that New York law precludes a duly formed legal entity from being a "d/b/a" of a legal entity.  This is a legal argument which has no place in a 56.1 statement.  Plus, what New York law requires is irrelevant.  SMC could have treated Industries as a d/b/a of Ready Mix even though New York law counseled against it.

Defendants argue that these terms and conditions were not in effect when Industries signed the Credit Application, but they do not say what terms and conditions *were* in effect at that time or that substantively different terms and conditions applied to the Credit Application by virtue of when it was signed.

On December 9, 2024, SMC sent a letter-demand for the outstanding payments, which it addressed to Ready Mix at 1634 New Hwy. No one paid. SMC emailed a final demand for the outstanding payments on July 9, 2025 to Del Monaco, which it addressed to Del Monaco and to "Red Rock Industries Inc. d/b/a Red Rock Ready Mix LLC" at 1634 New Hwy. Again no one paid.

SMC brings claims for breach of contract, unjust enrichment, and account stated against Industries and Ready Mix (based on defendants' representation that Ready Mix, not Industries, is the true counterparty to the contract) for their failure to perform their obligations under the Credit Application. SMC also brings a claim for enforcement of the personal guarantee against Del Monaco.

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v. NOCO Motor

Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  Rather, "'[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586-87); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).  Indeed, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor."  Anderson, 477 U.S. at 256.[2]

## II.   **Breach of Contract**

The terms and conditions stated that the parties' agreement shall be construed and enforced "in accordance with the laws of the State where the terminal from which the Product was loaded is situated[.]"  The terminal for the deliveries of these orders was in New York. Therefore, New York law governs this dispute.

The four elements of a breach of contract claim under New York law are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Merrill Lynch Cap. Servs., Inc. v. UISA Fin.,

---

[2] The Court set a briefing schedule for summary judgment that ran concurrently with the discovery schedule.  After discovery closed, the Court permitted the partes to file supplemental briefing on the motion.  Defendants filed supplemental briefing and did not seek further discovery.  It follows that defendants received "the opportunity to discover information that is essential to their opposition to the motion for summary judgment" and that granting the motion would not be improper.  See Hellstrom v. U.S. Dep't of Veterans Affs., 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks and citation omitted).

No. 09-cv-2324, 2012 WL 1202034, at *6 (S.D.N.Y. Apr. 10, 2012) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)), aff'd, 531 F. App'x 141 (2d Cir. 2013).  To satisfy the first element, "there must be an offer, acceptance, consideration, mutual assent and intent to be bound."  See Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (internal quotation marks and citations omitted).

It is undisputed that the Credit Application and its associated terms and conditions constituted a valid contract under New York law – between whom is where the parties disagree. On February 2, 2022, Industries offered to purchase cement from SMC via the Credit Application and subject to the terms and conditions.  On February 11, 2022, SMC accepted. With this offer and acceptance, a contract between Industries and SMC was formed.  It doesn't matter whether Otterman *should have* filled out the Credit Application on behalf of Ready Mix or *intended to* "amend and resend" the Credit Application to reflect Ready Mix as the applicant: he filled it out on behalf of Industries, and that's the Credit Application that SMC received and approved.

Defendants take the position that SMC couldn't have had a contract with Industries because Industries is a general contractor with no use for cement powder.  This argument gets defendants nowhere.  The Credit Application was for Industries, not Ready Mix.  It wasn't SMC's responsibility to know the ins and outs of Industries' business or to question its reasons for seeking cement powder.

There was a contract between SMC and Industries.  Next: was there adequate performance on one side and breach on the other?  The answer is clearly yes.  The Red Rock Account placed 40 orders for cement between March 11, 2024 and July 16, 2024.  As the account holder, Industries agreed that the terms and conditions would govern those purchases,

7

and the terms and conditions stated that the account holder "agree[d] to pay the prices as quoted by [SMC] or its authorized agents ... together with all applicable fees," and to "pay all invoices within 30 days of the date of the invoice" to avoid incurring late payment fees and assuming responsibility for SMC's collection expenses.  SMC satisfied its end of the bargain: it filled, delivered, and invoiced every order placed on the Red Rock Account.  That's performance.  The Red Rock Account accepted the materials without objection yet did not pay.  That's a breach.

The final, hotly disputed question: which entity is liable for the breach, Industries or Ready Mix?  The Court has already determined that the counterparties to the contract at its formation were SMC and Industries.  Therefore, unless Ready Mix assumed Industries' obligations under the contract, Industries is liable for the breach.  Importantly, however, "one party to a contract cannot ... release or alter its obligations; the intention must be mutual."  Nat'l Lab. Rels. Bd. v. Newark Elec. Corp., 14 F.4th 152, 167 (2d Cir. 2021) (quoting 17A Am. Jur. 2d Contracts § 489); see also Contemp. Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 924 (2d Cir. 1977) ("No one can assign his liabilities under a contract without the consent of the party to whom he is liable."  (quoting 3 Williston on Contracts § 411)).  "This is sufficiently obvious when attention is called to it, for otherwise obligors would find an easy practical way of escaping their obligations."  Contemp. Mission, Inc., 557 F.2d at 924 (quoting 3 Williston on Contracts § 411).

Industries seeks to escape its obligation to pay SMC by arguing, in effect, that it assigned its rights and obligations under the Credit Application to Ready Mix.  The vague emails from ap@redrockprecast.com – the email address of *another* Red Rock entity – to SMC about changing account information do not constitute a request by Industries to assign the contract to

8

Ready Mix.[3]  And, as is clear from the record, SMC did not agree to release Industries from its obligations under the contract after receiving those emails; rather, it treated the Red Rock Account as Industries doing business as Ready Mix and made no changes to the underlying Credit Application (not that Industries ever requested to amend it).  In sum, Industries didn't ask to be released from its obligations and SMC certainly didn't agree to release Industries from its obligations.  As a result, Industries remains liable on the contract.[4]

If defendants want Ready Mix to be jointly liable on the contract under the theory that Industries delegated its obligations to Ready Mix, so be it.  But "[t]he act of delegation ... does not relieve the delegant of the ultimate responsibility to see that the obligation is performed.  If the delegate fails to perform, the delegant remains liable."  Contemp. Mission, Inc., 557 F.2d at 924.  No one has paid SMC, so Industries remains liable on the contract that it executed.

### III.    Personal Guarantee

A guarantee is a contract, so in determining its enforceability, the Court again considers the four elements of a breach of contract claim under New York law.  See Merrill Lynch Cap.

---

[3] Defendants think that requesting to change the Red Rock Account's bill-to and ship-to address to 1634 New Hwy should have alerted SMC that its customer was Ready Mix (which operated a plant at that address) instead of Industries (which had an office building at 1630 New Hwy).  The Court agrees with SMC that this address dispute is a red herring.  But beyond that, the Court doesn't see how the change of address could have alerted SMC to anything.  DeLuca testified that Industries' address in 2022 was 1634 New Hwy.  Industries' registration with the New York Department of State lists an address of 1634 New Hwy.  Industries' letterhead lists an address of 1634 New Hwy.  Otterman's W-2 from Industries lists an address of 1634 New Hwy.  How was SMC to know that 1634 New Hwy was Ready Mix's address when even Industries personnel didn't know?

[4] Beyond the fact that SMC did not consent to Industries assigning its obligations to Ready Mix, there is no evidence of any agreement between Industries and Ready Mix whereby Ready Mix expressly assumed Industries' obligations.  Under New York law, "a party to a contract is not relieved of [its] obligations by a simple assignment of the contract; the assignment must specifically provide for a release from liability upon assignment."  Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC, No. 22-cv-2538, 2023 WL 4493542, at *16 (S.D.N.Y. July 12, 2023) (internal quotation marks and citations omitted); see also Wiederman v. Spark Energy, Inc., No. 19-cv-4564, 2020 WL 3965258, at *9 (S.D.N.Y. Mar. 9, 2020) ("[A]n assignee of rights under a contract will not be not bound by the assignor's obligations under that a contract unless the assignee expressly assumes to do so." (internal quotation marks and citation omitted)); TMS Ent. Ltd. v. Madison Green Ent. Sales, Inc., No. 03-cv-0517, 2005 WL 476663, at *4 (S.D.N.Y. Feb. 28, 2005) ("In the absence of express assumption of duties, the assignee incurs no obligation.").

Servs., Inc., 2012 WL 1202034, at *6.  Defendants dispute the first element, arguing that

Otterman did not have authority to sign the personal guarantee on Del Monaco's behalf.

"It is well settled under New York law that an agent may bind his principal when he has

actual … authority."  Id. (citing Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 122

(2d Cir. 1998)).  Actual authority "arises from a direct manifestation of consent from the

principal to the agent."  Id. (quoting Meisel v. Grunberg, 651 F. Supp. 2d 98, 110 (S.D.N.Y.

2009)).  Thus, the perception of any third party, including the counterparty to the contract, is

irrelevant.  Id.

Defendants' challenge centers on Otterman's actual authority to bind Del Monaco to the

guarantee.  Del Monaco testified that Otterman had authority to sign credit applications on Del

Monaco's behalf as a matter of course, but that personal guarantees were something different;

according to Del Monaco, Otterman was supposed to ask for Del Monaco's permission.

At Del Monaco's deposition, when SMC's counsel showed Del Monaco that Otterman

emailed him the Credit Application with the signed personal guarantee, Del Monaco replied that

he didn't always look at emails.  When SMC's counsel showed Del Monaco four other contracts

that also contained personal guarantees with Del Monaco's signature, Del Monaco replied that

none of the personal guarantees were enforceable because he did not personally sign them.

Construing the facts in the light most favorable to defendants, there is an issue of fact as to

whether Otterman had actual authority to bind Del Monaco to the personal guarantee.

But even when an agent lacks actual authority, "he may nonetheless bind his principal to

a contract if the principal has created the appearance of authority, leading the other contracting

party to reasonably believe that actual authority exists."  Highland Capital Mgmt. LP v.

Schneider, 607 F.3d 322, 328 (2d Cir. 2010).  "Apparent authority exists when a principal, either

10

intentionally or by lack of ordinary care, induces a [third party] to believe that an individual has been authorized to act on its behalf." Id. (quoting Peltz v. SHB Commodities, Inc., 115 F.3d 1082, 1088 (2d Cir. 1997)).  To hold a principal liable under this theory, the party seeking to enforce the contract must establish that the principal was responsible for the appearance of authority in the agent and that its reliance on the appearance of authority in the agent was reasonable.  Merrill Lynch Cap. Servs., Inc., 2012 WL 1202034, at *7, *18.  Moreover, under New York law, it is well-established that a party need not take affirmative action to vest his agent with apparent authority – acquiescence in the agent's conduct will suffice:

> For the protection of innocent persons, the law will imply authority in an agent to do acts which, although forbidden by the principal before they are done, are, nevertheless, recognized by him as valid after they are done.  If, through inattention or otherwise, the principal suffers his agent to act beyond his authority without objection, he is bound to those who are not aware of any want of authority to the same extent as if the requisite power had been directly conferred.

Hanover Nat. Bank of City of New York v American Dock & Trust Co., 148 N.Y. (2 E.H. Smith) 612, 620, 43 N.E. 72 (1896); accord Merrell-Benco Agency, LLC v. HSBC Bank USA, 20 A.D.3d 605, 608-09, 799 N.Y.S.2d 590 (3rd Dep't 2005).

Del Monaco's conduct shows that he invested Otterman with apparent authority to execute the guarantee.  In fact, it seems clear that Del Monaco is playing a shell game with his companies as well as his personal guarantee.  The modus operandi he used here is something he has done many times before.  The record shows he has been sued multiple times on his personal guarantee for loans, other financing, or trade credit extended to Industries, and in each instance, he disclaims the authority of his agent to have given his personal guarantee, whether given through Docusign or a digital signature.[5]  He has not even tried to hide his shuffling of those

---

[5] The lenders are Alliance Funding Group, Webfund, LLC, and Westwood Funding.  He has also personally guaranteed merchant cash advances to Overnight Capital, LLC, although it is not clear if that matter has ripened to litigation.

11

companies to avoid debt.  At his deposition, he acknowledged forming a new LLC in 2025, Structure Industries, "[f]or new contracts with customers" because he "needed a company that was clean, that wasn't attached to any liens or ... lawsuits."

There is no evidence in the record that any business was willing to extend credit to Industries without Del Monaco's personal guarantee.  There is evidence, however – and Del Monaco does not deny it – that the SMC Credit Application, inclusive of his personal guarantee, was sent to his email address.  He denies reading the email or reviewing the Credit Application, but that is not good enough.  He took no action to pull Otterman back from offering the guarantee.  Just as with the other lawsuits he is facing, Del Monaco is attempting to avoid personal liability by putting his agent out there to execute personal guarantees, and then disclaiming responsibility based on the fact that he wasn't the one to sign them and never bothered to read them.

Further, Del Monaco never disclaimed DeLuca or Greco or anyone else's authority with respect to the personal guarantee (or the Credit Application, for that matter), even when Red Rock personnel attempted to change information on the Red Rock Account months after the contract was executed.  This is not a case of Otterman holding himself out as an agent with no acquiescence from Del Monaco.  This was Del Monaco's standard way of doing business. SMC is right: "[b]usiness owners who relinquish such unfettered authority to manage and complete their credit applications must assume the liability for what is completed on their behalf." (Citation omitted).  Del Monaco clearly handed the keys to everyone, giving SMC no reason to question the enforceability of the personal guarantee.  Therefore, Del Monaco remains bound.

## CONCLUSION

The Court grants summary judgment to SMC for breach of contract and enforcement of the personal guarantee.  Because the Court grants summary judgment to SMC on the breach of contract claim, the Court dismisses the account stated and unjust enrichment claims as duplicative.  See Fometal S.R.L. v. Keili Trading LLC, No. 22-cv-1928, 2022 WL 17485317, at *2 (S.D.N.Y. Dec. 7, 2022) (collecting cases).

SMC is entitled to judgment against defendants, jointly and severally, in the principal amount of $281,087.90.  Interest accrues from June 12, 2024, the midpoint of when the outstanding invoices were due, see LM Ins. Corp. v. Safety Nat'l Cas. Corp., 771 F. Supp. 3d 190, 209 (E.D.N.Y. 2025), to the date of this judgment, at the rate of 18% annually, for a total of $365,229.44.  The Clerk is directed to enter judgment accordingly.  SMC may move separately for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54.

**SO ORDERED.**

_Brian M. Cogan_
_____
U.S.D.J.

Dated: Brooklyn, New York
       February 7, 2026

13